# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2017

Lyle W. Cayce
Clerk

————

No. 16-30849

————

Consolidated with 16-30851, 16-30852, 16-30853, 16-30854, 16-30856, 16-30857, 16-30860, 16-30861, 16-30862, 16-30864, 16-30865, 16-30866, 16-30867

CLAIMANT ID 100218776,

> Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

> Objecting Parties - Appellees

————

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-8478

————

Before DAVIS, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:*

   In these consolidated cases, Royal Caribbean Cruise Line ("RCCL") challenges the district court's refusal to review a series of Administrative Appeal Panel decisions. In each decision, the Appeal Panel found that RCCL

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

was not eligible to bring a claim under the *Deepwater Horizon* Economic and Property Damages Settlement Agreement (the "Settlement Agreement"), which the district court approved between BP Exploration & Production, Inc., BP America Production Co., and BP P.L.C. (collectively "BP") and the Economic and Property Damages Settlement Class (the "Class") in 2012. For the reasons stated below, we agree that RCCL is ineligible to join the Class and therefore AFFIRM.

## I.     Factual Background and Procedural History

The *Deepwater Horizon* oil spill and the ensuing Settlement Agreement "are no strangers to this court."[1] Because the sole issue presented here is whether RCCL is eligible to join the Class, we only discuss the facts necessary to resolve that question.

RCCL is a cruise-line company that operated ten foreign-flagged cruise ships throughout the Gulf of Mexico between April 2010 and April 2012—the relevant period for determining Class eligibility. According to RCCL, during that time frame, the oil spill diminished the beauty and desirability of the Gulf waters, which, in turn, discouraged consumers from purchasing RCCL's cruises. As a result, RCCL allegedly suffered more than $330,000,000 in losses.

In 2013, RCCL filed ten economic loss claims with the Claims Administrator of the Court Supervised Settlement Program.[2] The

---

[1] *Claimant ID 100128765 v. BP Expl. & Prod., Inc.*, ---F. App'x---, 2017 WL 4310087, at *1 (5th Cir. Sept. 27, 2017) (citing *In re Deepwater Horizon*, 785 F.3d 1003, 1008–09 (5th Cir. 2015)); *see also In re Deepwater Horizon*, 732 F.3d 326, 329–31 (5th Cir. 2013) (discussing background of the oil spill and history of the settlement at length).

[2] RCCL filed six additional claims in 2013. RCCL voluntarily dropped two of those claims because they related to cruise ships that spent no time in the Gulf of Mexico during the pertinent time period. RCCL nominally appealed the other four claims, which related to RCCL's purported operation of docks in the Gulf Coast area. Though RCCL appealed those claims, it failed to adequately brief them and they are thus waived. *Unites States v. Moreno*,

Administrator denied RCCL's claims, and RCCL sought review. Because RCCL filed ten different claims, ten separate Appeal Panels reviewed the Administrator's denials. The Panels unanimously affirmed those denials with nearly identical reasoning. Each Panel found that the subsection of eligibility criteria in the Settlement Agreement specifically pertaining to "vessels," which RCCL could not satisfy, controlled RCCL's ability to join the Class. RCCL then filed several requests for discretionary review with the district court. The district court denied those requests, and RCCL appealed.

## II. Jurisdiction and Standard of Review

The district court had admiralty and maritime jurisdiction over the underlying matter.[3] We have appellate jurisdiction over the instant consolidated appeal under the collateral order doctrine.[4]

Although we generally review district court orders denying discretionary review for abuse of discretion, the standard of review is "effectively de novo" when the district court was "presented with purely legal questions of contract interpretation."[5] Because we are presented with a question regarding the proper interpretation of the eligibility criteria in the Settlement Agreement—a purely legal issue—our review is effectively de novo.

---

857 F.3d 723, 727 (5th Cir. 2017) (citing *United States v. Lindell*, 881 F.2d 1313, 1325 (5th Cir. 1989)).

[3] *See* U.S. CONST., art. III, § 2; 28 U.S.C. § 1333; 33 U.S.C. § 2717(b); 43 U.S.C. § 1349(b); 46 U.S.C. § 30101.

[4] *See In re Deepwater Horizon*, 785 F.3d at 1009.

[5] *Id.* at 1011 (citing *United States v. Delgado-Nuñez*, 295 F.3d 494, 496 (5th Cir. 2002)); *see also Claimant ID 100197593 v. BP Expl. & Prod., Inc.*, 666 F. App'x 358, 360 (5th Cir. 2016).

## III.   Discussion

A business entity can join the Class if it meets the eligibility criteria outlined in Section 1.2 and the damage requirements of Section 1.3.[6] Section 1.2 includes within the Class four categories of claimants:

> All Entities doing business or operating in the Gulf Coast Areas or Specified Gulf Waters that:
>
> 1.2.1. at any time from April 20, 2010 to April 16, 2012, owned, operated, or leased a physical facility in the Gulf Coast Areas or Specified Gulf Waters and (A) sold products in the Gulf Coast Areas or Specified Gulf Waters (1) directly to **CONSUMERS** or **END USERS** of those products or (2) to another Entity that sold those products directly to Consumers or End Users of those products . . . .
>
> 1.2.2. are service businesses with one or more full-time employees (including owner-operators) who performed their full-time services while physically present in the Gulf Coast Areas or Specified Gulf Waters at any time from April 20, 2010 to April 16, 2012; or
>
> 1.2.3. owned, operated or leased a vessel that (1) was Home Ported in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012 . . . ; or
>
> 1.2.4. owned or leased **REAL PROPERTY** in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012; . . . .

RCCL acknowledges that its cruise ships are "vessels" as that term is used in subsection 1.2.3 and that none of its "vessels" were "Home Ported in

---

[6] The damage criteria is not at issue in this appeal.

4

the Gulf Coast Areas" during the relevant time period. RCCL nevertheless contends that it should qualify as a Class member because its cruise ships are "physical facilities" under subsection 1.2.1 and "service businesses" under subsection 1.2.2. BP argues that it is irrelevant that RCCL's ships may constitute "physical facilities" or "service businesses," because RCCL cannot join the Class as a "vessel" owner unless it meets the requirements of subsection 1.2.3.

We apply accepted rules of contract interpretation to resolve this dispute. It is axiomatic that, to the extent possible, a court should interpret "all the terms in a contract without rendering any of them meaningless or superfluous."[7] It is likewise well-settled that where a general provision and a narrow, specific provision overlap and the specific provision fits the facts at hand, the specific provision controls.[8] This prevents the general provision from swallowing the specific, and it gives effect to every clause in a contract.[9]

Here, in order to give effect to every clause of the Settlement Agreement's eligibility criteria, subsection 1.2.3, the more specific subsection, must control RCCL's eligibility. All commercial vessels provide services of one kind or another. Some transport cargo. Some transport people. Others, such as tugboats, dredges, and jack-up barges, provide specialized services. If these "vessels" are eligible to join the Class under subsection 1.2.2 simply because they traversed the Gulf waters while performing their services—without

---

[7] *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).

[8] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065, 2071 (2012).

[9] *Id.* Although *RadLAX* dealt with statutory provisions, these principles apply with equal force to contracts. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93–100 (2012).

having a home port in the Gulf—then subsection 1.2.3's "Home Ported" requirement is a dead letter.

The negative implication canon, *expressio unius*, which dictates that "specification of the one implies the exclusion of the other," further buttresses that conclusion.[10] By expressly limiting Class eligibility to those entities owning or operating vessels "Home Ported in the Gulf Coast Areas," the Settlement Agreement necessarily implies that an entity owning or operating a vessel *not* "Home Ported" in the Gulf cannot enter the Class. RCCL cannot sidestep that implication and enter the Class through subsection 1.2.1 or 1.2.2 without nullifying the negotiated "Home Ported" requirement.

In sum, RCCL can join the Class only if it meets the requirements of subsection 1.2.3. As indicated above, RCCL concedes that it cannot meet those requirements, because none of its "vessels" were "Home Ported" in the Gulf during the relevant time period.

Therefore, RCCL cannot join the Class.[11] The district court did not abuse its discretion by denying review of the various Appeal Panel decisions.

### IV.   Conclusion

For these reasons, we AFFIRM the district court.

---

[10] *See* Scalia & Garner, *supra* note 9, at 107.

[11] Because we find that RCCL must bring any claim it has based on its "vessels" under subsection 1.2.3, we need not consider RCCL's arguments that its ships are "physical facilities" under 1.2.1 and "services businesses" under 1.2.2.

6