# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 15-30860

———————

HOLMES MOTORS, INC.,

Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

Objecting Parties - Appellees

————————

Appeal from the United States District Court
for the Eastern District of Louisiana

————————

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2016

Lyle W. Cayce
Clerk

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Appellant Holmes Motors, Inc. filed a claim for damages with the Court Supervised Settlement Program. Although Holmes alleged that it qualified as a "Start Up Business," the Claims Administrator reclassified it as a general business claimant. The district court declined to review this decision. Holmes now appeals to this Court, and we AFFIRM.

## I.

This case concerns the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement Agreement"). As we have

No. 15-30860

explained in several prior opinions,[1] the Court Supervised Settlement Program ("CSSP") is responsible for administering the Settlement Agreement and processing claims related to the Deepwater Horizon oil spill. Appellant Holmes Motors, Inc. ("Holmes") operates a car dealership near Biloxi, Mississippi. In August 2012, Holmes filed a claim with the CSSP. Although Holmes was founded in 1990 and most recently incorporated in 1999, Holmes alleged that it qualified as a "Start Up Business." The Claims Administrator disagreed and "reclassified" Holmes as a general business claimant. After unsuccessfully challenging this decision through the CSSP's internal appeals process, Holmes filed a request for discretionary review with the district court. The district court denied Holmes's request without opinion. Holmes timely appealed to this Court.

## II.

We review the district court's denial of discretionary review for abuse of discretion.[2] In a series of unpublished opinions, our review by the metric of abuse of discretion has asked "whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement."[3] Although this formulation is not necessarily exhaustive, we agree that the district court abuses its discretion if either of these circumstances applies. Holmes argues that both apply here.

## A.

Holmes's primary argument is that the district court erred by denying discretionary review because the denial left in place an incorrect interpretation

---

[1] *See In re Deepwater Horizon*, No. 15-30395, 2016 WL 889605, at *1 n.1 (5th Cir. Mar. 8, 2016) (collecting cases).

[2] *See In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015).

[3] *See In re Deepwater Horizon*, 2016 WL 889605, at *4 (footnote omitted).

of the Settlement Agreement. That is, Holmes argues that it qualifies as a "Start Up Business" under the Settlement Agreement. The Settlement Agreement defines a "Start Up Business" as "a business with less than 18 months of operating history at the time of the Deepwater Horizon Incident, as more fully described in Exhibit 7."[4] Holmes claims that the plain meaning of "a business" is a *line of business*, not a business *entity*. As support, Holmes cites several dictionary definitions of "business" that "involve the commercial activity or enterprise, not the actual business entity's formation date, any ownership changes, or any identifying number assigned to it." If this interpretation is accepted, any claimant that changed its line of business within 18 months of the Deepwater Horizon oil spill qualifies as a "Start Up Business." Holmes contends that it made such a change when it switched from selling new and used cars to leasing cars in early 2010.

We reject Holmes's interpretation of the Settlement Agreement. "The Settlement Agreement provides that it 'shall be interpreted in accordance with General Maritime Law.'"[5] "When interpreting maritime contracts, federal admiralty law rather than state law applies."[6] Under admiralty law, a contract "should be read as a whole and its words given their plain meaning unless the provision is ambiguous."[7] At least in the context of a "Start Up Business," the plain meaning of "a business" is a business entity, not a line of business. The Settlement Agreement provides that the term "Start Up Business" is "more

---

[4] Settlement Agreement § 38.137.

[5] *In re Deepwater Horizon*, 785 F.3d 986, 994 (5th Cir. 2015) (quoting Settlement Agreement § 36.1).

[6] *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013); *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22-23 (2004) ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation.").

[7] *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984) (per curiam)); *see also Int'l Marine, L.L.C. v. FDT, L.L.C.*, 619 F. App'x 342, 349 (5th Cir. 2015).

No. 15-30860

fully described in Exhibit 7." The introductory paragraph of Exhibit 7, in turn, explains that "[f]or purposes of this Framework, a 'Start-up Business' is considered to be a *claimant* with less than eighteen months of operating history at the time of the DWH Spill." As BP notes, only a business entity can be a "claimant," not a line of business.[8] These interlocking definitions, therefore, resolve the interpretive dispute presented here; a "Start Up Business" is a business entity—not a line of business—with less than 18 months of operating history at the time of the Deepwater Horizon oil spill.

But even if Holmes's interpretation of the Settlement Agreement were correct, we would still reject its claim. Holmes urges that it adopted a new "line of business" when it switched from selling new and used cars to leasing cars. Yet Holmes conceded at oral argument that it leased cars before this alleged switch and continued to sell used cars after the switch. The ordinary meaning of a "Start Up Business" also suggests that a claimant must undergo a drastic and fundamental change to enter a new "line of business." We are not persuaded that it is enough for a claimant to switch from selling cars to leasing cars. Although the details of these two business models are different, the basic commercial activity is the same—conveying cars to consumers. Indeed, this is likely why it is common for a company like Holmes to both lease and sell cars. As a result, we conclude that the Claims Administrator's decision did not misapply the Settlement Agreement.

## B.

Apart from the merits, Holmes argues that the district court was required to grant discretionary review as part of its duty to "meaningfully

---

[8] *See* Settlement Agreement § 38.15 ("Business Claimant or Business Economic Loss Claimant shall mean an Entity, or a self-employed Natural Person . . . who is an Economic Class Member claiming Economic Damage allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident.").

supervise" the Settlement Agreement.  Holmes explains that "[p]ossessing th[e] power [of discretionary review] implies that the MDL court should employ its review power to resolve legitimate issues regarding the meaning of the Settlement Agreement's provisions."  Holmes insists that the district court cannot "arbitrarily decide which contract interpretation issues that it wants to address."  Drawing on an unpublished opinion of this Court, Holmes contends that review was particularly necessary in this case because its claim implicates an issue that (a) is potentially reoccurring and (b) has divided Appeal Panels.[9]

Holmes is wrong to suggest that the district court must grant review of *all* claims that raise a question about the proper interpretation of the Settlement Agreement.  As this Court has explained, the parties agreed to grant the district court a "discretionary" right of review, "which is not a right for the parties to be granted such review."[10]  Any holding that "turn[ed] the district court's discretionary review into a mandatory review . . . would frustrate the clear purpose of the Settlement Agreement to curtail litigation."[11]  Holmes's argument that the district court was required to grant review of its particular claim is similarly unpersuasive.  In a recent decision, this Court concluded that the district court abused its discretion in denying discretionary review of a claim that raised a question that "ha[s] and will come up repeatedly."[12]  Indeed, this Court noted that the question had generated a "split" among the over thirty Appeal Panels that had considered it.[13]  Holmes has not made a similar showing.  Rather, it has identified two Appeal Panel decisions involving significantly different facts that are—at worst—in tension

---

[9] *See In re Deepwater Horizon*, 632 F. App'x 199, 203-04 (5th Cir. 2015).

[10] *In re Deepwater Horizon*, 785 F.3d at 999.

[11] *Id.*; *see also In re Deepwater Horizon*, No. 15-30395, 2016 WL 889605, at *4 (5th Cir. Mar. 8, 2016).

[12] *In re Deepwater Horizon*, 632 F. App'x at 203.

[13] *See id.* at 203-04 & n.3.

No. 15-30860

with the decision of the Appeal Panel in this case. "If the discretionary nature of the district court's review is to have any meaning,"[14] the district court cannot be required to exercise its power of discretionary review in these circumstances.

### III.

For the reasons stated above, we AFFIRM.

---

[14] *In re Deepwater Horizon*, 2016 WL 889605, at *4.