# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30778
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2019

Lyle W. Cayce
Clerk

CLAIMANT ID 100248748,

    Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

    Objecting Parties - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-4952

Before HIGGINBOTHAM, ELROD, and DUNCAN, Circuit Judges.

PER CURIAM:*

Lightning Hockey, LP operates Tampa Bay Lightning, a professional team that plays in the National Hockey League. For damages sustained as a result of the Deepwater Horizon oil spill, the Court Supervised Settlement Program (CSSP) concluded that Lightning Hockey was entitled to compensation in accordance with the Economic and Property Damages

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30778

Settlement Agreement.[1] Lightning Hockey appeals the district court's order that declines to review whether its award was correctly calculated under the Settlement Agreement. We affirm.

I.

Lightning Hockey's claim is treated as a "Business Economic Loss" (BEL) under the Settlement Agreement, which establishes a framework for administering such claims. First, the Claims Administrator—who is charged with making an initial determination of a claimant's eligibility for an award—calculates a claimant's "Variable Profit" for a pre-spill and post-spill period. To calculate the Variable Profit, "revenue must be matched with the variable expenses incurred by a claimant in conducting its business." *In re Deepwater Horizon*, 2013 WL 10767663, at *3 (E.D. La. Dec. 24, 2013). Profits and expenses are matched where "costs follow revenue." *In re Deepwater Horizon*, 858 F.3d 298, 301 (5th Cir. 2017).

Under the district court's direction, the Claims Administrator developed Policy 495 as "an appropriate protocol or policy for handling BEL claims in which the claimant's financial records do not match revenue with corresponding variable expenses." *In re Deepwater Horizon*, 2013 WL 10767663, at *3. Policy 495 requires the Claims Administrator to identify unmatched claims by evaluating a claimant's profits and losses under seven criteria. "Consideration of whether revenues and expenses are sufficiently matched necessarily [requires the CSSP's accountants to exercise] an element of professional judgment." If the claims do not match, Policy 495 requires the CSSP's accountants to "adjust the claimant-submitted accounting records"

---

[1] BP Exploration & Production Inc., BP America Production Co., and BP p.l.c. (collectively, BP) entered into the Settlement Agreement after the Deepwater Horizon oil spill.

using the methodologies in Policy 495 "to achieve sufficient matching as per the orders of the Court."

We have explained that the methodologies in Policy 495 divide "claimants into two categories: those engaged in construction, education, agriculture, and professional services"—who are subject to Industry-Specific Methodologies (ISMs), and those who are "engaged in everything else"—who are subject to an Annual Variable Margin Methodology (AVMM). *In re Deepwater Horizon*, 858 F.3d at 302. "The AVMM requires the Claims Administrator to match all unmatched profit and loss statements." *Id.* So, "prior to calculating damages, the Claims Administrator must ensure that costs are registered in the same month as corresponding revenue, regardless of when those costs were incurred." *Id.*

We recently held that the four ISMs were "inconsistent with the plain text of the Settlement Agreement." *Id.* at 303–04. We reasoned that "the ISMs [inappropriately] require the Claims Administrator to move, smooth, or otherwise reallocate revenue in violation of the Settlement Agreement." *Id.* We approved the AVMM, on the other hand, because "[m]atching unmatched profit and loss statements promotes" treating similarly situated claimants alike. *Id.* at 303.

In accordance with this framework, the Claims Administrator initially determined that under the AVMM Lightning Hockey was eligible to receive $298,947.07[2] for its BEL claim. In coming to this determination, the CSSP accountants found that Lightning Hockey's profits and losses triggered one of the seven criteria,[3] and so required further matching analysis. Lightning

---

[2] After adding a "risk transfer premium" and "claimant accounting support" to this figure, the total award ballooned to $902,820.15.

[3] Specifically, the accountants found that the sixth criterion was triggered because the "variable margin percentages when compared between any two months included within the Benchmark Year(s) and Compensation Year var[ied] by more than 50 percentage points."

No. 18-30778

Hockey requested reconsideration. The Claims Administrator granted this request and, upon further review, concluded that three of the seven criteria were triggered.[4] Accordingly, the Claims Administrator found that Lightning Hockey was eligible for an award of $260,968.10—which, after factoring in a "risk transfer premium" and "claimant accounting support," grew to $788,123.66.

Lightning Hockey sought review from a CSSP Appeal Panel, which found "no error" in the Claims Administrator's application of the AVMM or the final award. Lightning Hockey petitioned the district court to exercise discretionary review over the CSSP's determination, but the district court declined. Lightning Hockey appeals to this court, contending that the district court abused its discretion.

II.

Judicial review of CSSP determinations is not required. Instead, the Settlement Agreement "gives the district court discretion to decide whether it will review an award at all." *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015). Disturbing the district court's denial of review is unwarranted unless we find an abuse of discretion. *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F. 3d 313, 315 (5th Cir. 2016). And we will find an abuse of discretion only in limited circumstances. This task does not require us to "examine whether the CSSP was actually correct." *Claimant ID 100250022 v. BP Expl. & Prod., Inc.*, 847 F.3d 167, 170 (5th Cir. 2017). Rather, we consider whether

---

[4] In addition to the sixth criterion, the accountants further concluded that the second and seventh criteria were also triggered. The second criterion is triggered when the "total revenue recorded in any month included in the Benchmark Year(s), Compensation Year or 2011 exceeds 20% of the claimant's annual revenue for the year which includes that month." The seventh criterion is triggered when, "in any given month within the Benchmark Year(s) or Compensation Year, the variance between that month's percentage of annual revenues as compared to that same month's percentage of annual variable expenses exceeds 8 percentage points."

the CSSP's "decision contradicts or misapplies the Settlement Agreement." *Id.* We ask whether the CSSP decision raises an issue that "is frequently recurring or has divided" Appeal Panels. *Claimant Id 100226366 v. BP Expl. & Prod., Inc.*, 671 F. App'x 940, 941 (5th Cir. 2016). We also consider whether the determination would "substantially impact administration of the Settlement Agreement" and whether "the district court's decision was premised on an error of law." *Claimant ID 100190818 v. BP Expl. & Prod., Inc.*, 718 F. App'x 220, 222 (5th Cir. 2018).

Where a party contests only "the correctness of a [single] discretionary administrative decision" that involves "no pressing question of how the Settlement Agreement should be interpreted or implemented," we have said that—if "the discretionary nature of the district court's review is to have any meaning"—we must affirm. *In re Deepwater Horizon*, 641 F. App'x 405, 410 (5th Cir. 2016) (citing *In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015)).

As restated in Lightning Hockey's reply brief, the question on appeal is whether the district court abused its discretion when declining to review the CSSP's decision that (1) "incorrectly applied the [AVMM] to Lightning Hockey's already matched [profits and losses]" because CSSP accountants failed to use sound professional judgment; and (2) "incorrectly chose a Fiscal Year for Lightning Hockey based solely on its hockey season"—which Lightning Hockey contends stems from "an interpretation inconsistent with the Settlement Agreement and this Court's previous rulings." According to Lightning Hockey, the CSSP chose a July-June fiscal year, instead of a January-December fiscal year, because of an improper "ISM revenue driven

theory." It contends the CSSP's errors reduced its award from approximately $12,466,646 to $782,904.[5]

BP counters that Lightning Hockey failed to raise its first argument before the CSSP and the district court, and so it is forfeited on appeal. *See Claimant ID 100197593 v. BP Expl. & Prod., Inc.*, 666 F. App'x 358, 363 (5th Cir. 2016). Indeed, it appears the argument has been forfeited on appeal because Lightning Hockey asked the district court to remand to the CSSP "for further analysis under a January-December AVM[M] analysis." But, even if not forfeited, this argument implicates only the application of the Settlement Agreement, not any pressing question regarding its interpretation. And, although Lightning Hockey argues that its second argument involves an incorrect interpretation of the Settlement Agreement, it has not explained whether the issue is frequently recurring or how it would have a substantial impact on the Settlement Agreement's administration. Lightning Hockey does not suggest that any of these issues have divided CSSP Appeal Panels. Moreover, we have held that, where possible, the CSSP should adhere to the claimant's accounting methods in processing claims, and Lightning Hockey's accounting records used a July-June fiscal year. *See In re Deepwater Horizon*, 858 F.3d at 303–04 (rejecting ISMs in favor of processing revenues when claimant recorded them).

At bottom, this appeal presents yet another request to force the district court to review the CSSP's application of the Settlement Agreement. *See In re Deepwater Horizon*, 641 F. App'x at 406 & n.1 (collecting cases). We reiterate

---

[5] The larger figure also presumably includes a "risk transfer premium" and "claimant accounting support" not relevant to this appeal.

No. 18-30778

that review of the CSSP's decisions is not mandatory, and the district court did not abuse its discretion by declining review here.

AFFIRMED.